United States Court of Appeals,

Fifth Circuit.

No. 92-3509.

Sharon Joyce WALKER, widow of Wade J. Trahan, on her own behalf & on behalf of her minor children, Jason Wayne Trahan & Josh Michael Trahan, Plaintiff-Appellee, Cross-Appellant,

v.

Armogene BRAUS, et al., Defendants,

Terra Resources, Defendant-Appellant, Cross-Appellee.

July 14, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

## I.

In 1987, Terra Resources, Inc. (Terra) acquired a Louisiana oil and gas field and sent Harold DeLeon to that location to oversee the facility. DeLeon was the only full-time employee of Terra assigned to Louisiana.

Terra contracted with Action Oil Field Services (Action) to provide labor to assist Terra in work in the oil fields. Action employees reported to Mr. Glynn Warr, the production foreman for Action. Action paid the employees for their labor and furnished any tools needed for a job.

Armogene Braus was the owner of three twenty-five foot aluminum crew boats that he rented out by verbal agreement on a day rate basis to various companies. Braus kept the boats on trailers in his yard at his home.

In June of 1987, Terra began using Braus's boat rental services to transport the Action workers to the oil field. Although DeLeon would sometimes accompany Braus on the boat and would occasionally drive the boat, Braus operated his own boat to transport men and equipment. Mr. Braus was free to charter his vessel to anyone else when it was not in use for Terra.

The verbal charter agreement between Terra and Braus provided that Braus had total responsibility for upkeep and maintenance, breakdowns and insurance on his boats. The daily rate

for the boat depended upon whether Braus operated it.  Terra was to pay for the fuel.  Braus testified that he used two different invoices for bareboat and time charters.

In early January 1988, Braus provided transportation to Terra for four days and submitted a "time charter" invoice to Terra for a total of $600 for boat and operator.

On January 5, 1988, while Braus was transporting four Action employees to the oil field to perform a job for Terra, his crew boat collided on a Louisiana inland waterway with a bass fishing boat owned and operated by Wade J. Trahan, the plaintiff's decedent.  Braus was operating the boat.  The Trahan's craft, traveling at an excessive rate of speed, struck the defendants' boat—killing Mr. Trahan instantly.  The accident occurred on a sharp bend in the waterway, where there was a blind spot that made it very difficult to see approaching water traffic on the other side of the bend.

Trahan was the sole occupant of his boat.  Braus and his passengers were in an enclosed compartment in Braus's craft, which reduced their ability to hear and see approaching vessels.  DeLeon was not on Braus's boat at the time of the accident.

The weather was clear and cold on the day of the accident.  There was testimony that established the Trahan vessel was planing, thus, it was estimated that it was traveling at least 20 mph.  The passengers on the Braus vessel had only enough time to shout "lookout" before Trahan's vessel struck theirs.

On March 4, 1988, Sharon Joyce Walker Trahan, on her own behalf and on behalf of her two minor children, filed this general maritime action under Fed.R.Civ.P. 9(h) against Armogene Braus and Terra Resources, Inc. to recover damages for the wrongful death of her husband, Wade Trahan.  Braus filed a counterclaim to recover damages to his boat against the estate of Wade Trahan and Trahan's insurer, State Farm Fire and Casualty Company.

The trial court bifurcated the trial on the issues of liability and damages.  Liability was tried on August 27, 1990 before the district court without a jury.  The court determined that:  (i) Trahan was 70 percent contributorily negligent for piloting his craft at an excessive speed on an unsafe course;  (ii) Trahan was 10 percent contributorily negligent for failing to maintain an adequate lookout;  (iii) The Braus vessel was 10 percent at fault for failing to maintain an adequate lookout;

and (iv) The Braus vessel was 10 percent at fault for failing to sound its horn when approaching the blind corner.

On April 8, 1991, the court entered findings of fact and conclusions of law assessing 80 percent of the fault against Trahan and 20 percent against Terra. The court said nothing about liability of Braus.

The court found in its finding of facts that because the four Action employee passengers on board the Braus vessel were embarked on a job for Terra on the day of the accident, they were Terra's employees that day. There was testimony at the trial that the Action employees kept a lookout for other vessels and helped in doing deck hand chores such as tying up or launching the vessel. This led the court to conclude that Terra supplied the crew for the Braus vessel.

The court then discussed the relationship between Terra and Braus. It noted: (i) Braus only traveled with the vessel when Terra needed a driver; (ii) Terra gave Braus his instructions; (iii) The crew was supplied by Terra; (iv) Terra paid for operating expenses; (v) The charter was for an indefinite period; and (vi) The vessel was at Terra's complete disposal. The court noted Braus's testimony that when he was on his vessel he was responsible. However, the court still concluded ultimately that Terra was a demise or bareboat charterer of the Braus vessel.

The damages phase of the trial was held on February 6, 1992. On May 1, 1992, the trial court entered findings of fact and conclusions of law in which plaintiff's damages were assessed at $160,000 for loss of society, $87,831.19 for loss of support from the date of the accident until trial, $271,612.56 for future loss of support and $5,270 for funeral expenses, all of which were then reduced by the 80 percent fault attributed to Wade Trahan.

Terra and Trahan have each taken this interlocutory admiralty appeal of the court's findings as follows:

     1. Terra contends that the district court erred in concluding that Terra was a demise charterer.

     2. Terra contends that the district court erred in awarding consortium damages to a nonlongshoreman in inland waters.

     3. Terra and Trahan claim that the district court did not award the proper amount of consortium damages.

4. Trahan argues that the Coast Guard accident report was not properly admitted into evidence.

5. Trahan alleges that the court did not properly allocate the fault percentages.

We hold that the trial court's finding that Terra was a demise charterer of the Braus's boat is clearly erroneous and reverse and render as to the judgment against Terra and REMAND the case to the district court for such further proceedings as may be appropriate against all other parties to this cause.

Since the issue of consortium damages may well come up again in the further proceedings, we suggest to the trial court that recent case law developments indicate that the trend is to eliminate consortium damages across the board in maritime cases.

II.

*Did The District Court Err In Concluding That Terra Was A Demise Charterer.*

A district court's determination of facts in an admiralty case may not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). *E.g., Johnson v. Offshore Exp., Inc.,* 845 F.2d 1347 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on all of the evidence is left with the definite and firm conviction that a mistake has been committed. *E.g. Consolidated Grain & Barge Co. v. Marcona Conveyor Corp.,* 716 F.2d 1077, 1082 (5th Cir.1983).

The clearly erroneous standard of review does not apply to factual findings made under an erroneous view of controlling legal principles. *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.,* 747 F.2d 995, 1000 (5th Cir.1984). Nor does the clearly erroneous standard apply to decisions made by district court judges when they apply legal principles to essentially undisputed facts. *United States v. Singer Mfg. Co.,* 374 U.S. 174, 194, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963).

Mixed questions of fact and law are subject to broad appellate review. *Amoco Transport. Co. v. S/S Mason Lykes,* 768 F.2d 659, 663 (5th Cir.1985).

A "charter" is an arrangement whereby one person (the "charterer") becomes entitled to the use of the whole of a vessel belonging to another (the "owner"). There are essentially two types of charters: the voyage or time charter and the bareboat or demise charter.

In a time charter the vessel owner retains possession and control of the vessel; provides whatever crew is needed and is responsible for normal operating expenses. Further, in a time charter the owner fully equips and maintains the vessel, makes repairs as needed and provides insurance on the vessel.

Generally the charterer's use of the vessel is limited under a voyage charter to a particular voyage between two defined points and under a time charter to a defined period of time. Since the principal purpose of a time or voyage charter is to move cargo owned by the charterer or to transport people who are employed by or performing work for the charterer, the courts have frequently compared a voyage or time charter to a contract of affreightment. The charterer pays a stated fee for the transportation services involved.

Under a bareboat or demise charter, on the other hand, the full possession and control of the vessel is transferred to the charterer. The stated consideration for a demise charter is payable periodically but without regard to whether the charterer uses the vessel gainfully or not. Under a bareboat or demise charter the vessel is transferred without crew, provisions, fuel or supplies, i.e. "bareboat"; and when, and if, the charterer operates the vessel he must supply also such essential operating expenses. Because the charter's personnel operate and man the vessel during a demise charter, the charterer has liability for any and all casualties resulting from such operation and therefore provides insurance for such liability.

In *Agrico Chemical Co. v. M/V Ben Martin,* 664 F.2d 85 (5th Cir.1981), Judge Rubin discussed the requirements for a demise charter and stated "a ... demise charter requires complete transfer of possession, command, and navigation of the vessel from the owner to the charterer." *Id.* at 91 (citing *Gaspard v. Diamond D. Drilling Co.,* 593 F.2d 605, 606 (5th Cir.1979). Further, Judge Rubin stated that "a demise is tantamount to, though just short of, an outright transfer of ownership." *Agrico,* 664 F.2d at 91 (citing *Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962)).

This Court in *Gaspard Id.* found that where a drilling company had a verbal agreement with a crew boat operator to ferry drilling employees to their work site, the agreement was a time charter,

not a demise charter. The Court in that case relied upon the facts that the crew boat operator never surrendered possession, command or navigation of the boat; maintained the vessel; operated and navigated it; supplied the crews; insured it; and paid for all repairs. The limited amount of control that the drilling company exercised over the boat operator was insufficient to overcome the presumption of a time charter. Thus, the law is well settled in this Circuit that the type of arrangement Terra had with Braus was for ferry or taxi service, or time charter; and, therefore, not a bareboat charter.

Trahan relies principally on, *Federal Barge Lines, Inc. v. SCNO Barge Lines, Inc.,* 711 F.2d 110 (8th Cir.1983), in defending the district court's demise charter finding. While the court in *SCNO* did find a demise charter in a situation where the owner provided a vessel complete with crew, it did so on the basis of a comprehensive written charter agreement which expressly stated the parties' intention to have a "full demise" charter and that the charterer would be "responsible for the navigation and operation of the vessel and direction of the crew." *See Id.* 111-112. We do not find the *SCNO* case persuasive on its facts or controlling in this in this Circuit.

Trahan also contends that the characterization of the charter is irrelevant because in either case Terra may be held liable on a borrowed servant theory. The problem with such contention is that the trial court did not find that Braus was a borrowed servant for Terra. And even if it had, the facts of this case would not support a finding that the borrowed servant doctrine is applicable. *See Ruiz v. Shell Oil co.,* 413 F.2d 310 (5th Cir.1969).

*Did The District Court Err In Awarding Consortium Damages to A Nonlongshoreman In Inland Waters?*

The recoverability of damages for loss of consortium is a legal question that is reviewed *de novo. Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

Terra relies principally on *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), in support of its argument that consortium damages are not recoverable for wrongful death actions in territorial waters. The *Miles* court held that loss of society damages are not recoverable in a general maritime action for death of a Jones Act seaman. Our Court has already extended *Miles* to preclude recovery for loss of society in a general maritime action involving

personal injuries to a seaman. *Michel v. Total Transportation, Inc.,* 957 F.2d 186, 191 (5th Cir.1992); *Murray v. Anthony J. Bertucci Construction Co. Inc.,* 958 F.2d 127 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 190, 121 L.Ed.2d 134 (1990).

The Supreme Court has clearly indicated its desire to achieve uniformity of damage recoveries in the exercise of admiralty jurisdiction. Allowing Trahan to recover loss of consortium damages would directly contradict the policy of uniformity emphasized and relied on by the Court in *Miles;* and with out expressly so deciding at this time, we acknowledge the strength of the argument that damages for loss of society may no longer be permitted in a general maritime wrongful death action involving the operator of a fishing boat.

## III.

## CONCLUSION

The trial court erred in concluding that Terra was a bareboat charterer because the factors relied upon by the court were legally insufficient to create such a charter. Accordingly the judgment of the trial court imposing liability upon Terra is REVERSED and RENDERED.

The case is REMANDED to the trial court for such other and further proceedings as may be appropriate.