# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 96-31256

---

TORCH, INCORPORATED, Owner of the L/B Torch I
and Operator of the M/V CHANTEL LYNN for Exoneration
from or Limitation of Liability,

Plaintiff,

THOMAS ALLEMAND; PATRICIA ALESICH; TEXACO
EXPLORATION AND PRODUCTION, INC; TEXACO,
INC; and TEXACO PIPELINE COMPANY INCORPORATED;
ERNEST ALLEMAND,

Claimants-Appellants,

versus

RAYMOND ALESICH, Individually and as Administrator of
the Estates of the Minors, Raymond Alesich, Ryan Alesich,
and Catherine Alesich; ALESICH COMPANY, INC.,

Claimants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

June 11, 1998

Before POLITZ, Chief Judge, REYNALDO G. GARZA and DENNIS, Circuit Judges.

POLITZ, Chief Judge:

Claimants appeal the trial court's decision holding that Alesich & Company, as owner

of the CHANTEL LYNN, was entitled to a limitations decree and thus was absolved from

liability exceeding the value of the vessel. For the reasons assigned, we affirm.

## BACKGROUND

These consolidated cases arise out of a tragic accident which occurred on July 6, 1994. Torch, Inc. was hired by Texaco Exploration and Production, Inc. to lay pipelines in canals in Plaquemines Parish. The job was performed by using the lugger CHANTEL LYNN to position and move the pipe-laying barge, TORCH I, forward in the canal. The lugger would push the barge forward at intervals the length of a 30 foot section of pipe. In order to stop the barge after it was pushed forward, Torch employees would drop the barge's 9,000 pound spuds into the canal. Once the barge was in place, Torch employees built the pipeline by screwing each pipe joint into a string of pipe. The joints were then sealed by using a propane torch to heat a plastic sleeve over same.

On the day of the accident, Raymond Alesich, a Torch employee, ordered the lugger to push the barge forward. Thereafter, he gave a hand signal indicating to other employees to drop the barge's spuds to stop the barge. Unfortunately, the spuds ruptured a gas line and a propane torch on the barge ignited the escaping gas. In the resulting fire one crew member drowned and others were injured.

After the accident Torch, Inc. and Alesich & Company sought exoneration from or limitation of liability as owners of vessels involved in the accident. The district court denied Torch's right to limitation because it found that the negligence of Torch was within the privity and knowledge of its management. Alesich's request for limitation was granted because the court found a bareboat or demise charter agreement between Torch and Alesich

2

and determined that the CHANTEL LYNN was seaworthy at the inception of the charter and at all relevant times. A timely appeal followed.

## ANALYSIS

1. Existence of Bareboat Charter

The factual findings of the trial court in a bench trial may not be set aside unless clearly erroneous and due regard must be given to its credibility evaluations.[1] Determining whether a bareboat charter exists is a mixed question of law and fact and is subject to broad appellate review.[2]

The CHANTEL LYNN, the only asset of Alesich & Company, was leased to Torch at the time of the accident. Torch and Alesich agreed, *inter alia*, that Torch would: (1) pay $165 to Alesich for every day the vessel was used;[3] (2) provide a crew and the necessary supplies to work the vessel; (3) maintain insurance on the vessel; and (4) absorb the cost of all repairs and maintenance to the vessel. Although this agreement was reduced to writing it apparently was never signed by Torch. Nevertheless, the actions of the parties were consistent with this agreement. Further, a charter party need not be in writing.[4]

---

[1] FED. R. CIV. P. 52(a).

[2] **Walker v. Braus,** 995 F.2d 77 (5th Cir. 1993).

[3] The charter agreement found in Torch's files indicated that Torch would pay Alesich & Company rent at the rate of $165 plus tax per day. Testimony at trial indicated that Alesich was to receive $161 per day. This minor discrepancy has no relevance in our analysis.

[4] **St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co., Inc.**, 666 F.2d 932 (5th Cir. 1982).

A bareboat charter requires that the owner relinquish complete and exclusive possession, command, and navigation of the vessel to the charterer.[5] With the exclusive control of the vessel, the charterer assumes many of the rights and obligations of the owner. The inquiry whether a bareboat charter exists in this case is complicated by the fact that in addition to being a Torch employee, Raymond Alesich is the president and principal stockholder of Alesich & Company, the owner of the CHANTEL LYNN. As part of his duties as a Torch employee Alesich occasionally served as captain of the CHANTEL LYNN. While having its president serve as captain seems to call into question whether Alesich & Company surrendered navigation and control of the vessel, it is clear from the record that while serving as captain, Raymond Alesich was working as a Torch employee and not as an individual or an employee of Alesich & Company. Appellants contend that because Torch paid for the vessel only on the days that it was actually used negates the existence of a bareboat charter. The essence of a bareboat charter is the complete surrender of possession and control by the vessel owner to the charterer. When the factual situation is not otherwise clear, the assumption of possession and control by the charterer may be evidenced by the charterer paying for use of the vessel "without regard to whether the charterer uses the vessel gainfully or not."[6] The existence of other payment arrangements, however, do not necessarily negate the existence of a bareboat charter. Contracting parties are free to

[5]**Guzman v. Pichirilo**, 369 U.S. 698 (1962).

[6]**Walker v. Braus**, 995 F.2d at 81.

4

negotiate mutually agreeable terms of payment. Requiring a flat rate of compensation, regardless of use or profit, has never been an essential to the finding of a bareboat charter in this circuit.[7]

In the case at bar, Torch stored the vessel, provided its crew, provided all necessary repairs and maintenance, listed the vessel as an available asset when bidding for contracts, and provided insurance for the vessel. It is clear that Alesich completely and exclusively relinquished possession, command, and navigation of the CHANTEL LYNN to Torch. Therefore, the trial court did not err in finding that the CHANTEL LYNN was leased to Torch pursuant to a bareboat charter.

2. Unseaworthiness Claim

Despite the existence of a bareboat charter, the owner of the vessel can be liable to third persons if the vessel was not seaworthy at the inception of the charter.[8] The trial court was correct in its determination that the CHANTEL LYNN was seaworthy at the inception of the charter and at all times relevant to this case. Testimony reflected that the vessel's horsepower was upgraded several years ago, making it capable of handling the tasks to which it was assigned. Further, appellants' contention that the vessel was unseaworthy because it did not contain up-to-date charts or maps of the area in question is without merit in light of the unanimous record testimony that the ruptured line was not listed on any available chart

---

[7]**Pan American Airways, Inc. v. Quilez**, 154 F.2d 496 (5th Cir. 1946)(finding a demise charter when the vessel owner was compensated by a percentage of profit).

[8]**Baker v. Raymond Intern., Inc.,** 656 F.2d 173 (5th Cir. 1981).

or map.  The record reflects no evidence of vessel negligence or unseaworthiness attributable to the CHANTEL LYNN.

3.	Conclusion

Alesich & Company, as owner of the vessel under a bareboat charter to Torch, is not liable to anyone as a result of this accident beyond its forfeiture of its vessel.  The CHANTEL LYNN was seaworthy at the inception of the charter and at all times relevant to this case.  Accordingly, Alesich & Company is exonerated from liability.  The other issues raised by appellants are not relevant in light of our finding that a bareboat charter existed between Torch and Alesich and that the actions of Raymond Alesich were made on behalf of his employer, Torch, Inc.

The judgment appealed is AFFIRMED.