United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 9, 2005

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 04-30064**

---

In Re: In the Matter of: MID-SOUTH TOWING CO., as Owner and
Operator of M/V Diane Oak, Praying for Exoneration from and/or
Limitation of Liability

MID-SOUTH TOWING COMPANY, Etc.; ET AL

Petitioners,

DOW CHEMICAL COMPANY

Claimant

-------------------------

TECO BARGE LINE, INC., Successor in Interest to Mid-South Towing
Company

Plaintiff – Appellant,

VERSUS

EXMAR LUX; ET AL

Defendants,

BONA SHIPHOLDING; WEST OF ENGLAND SHIP OWNERS MUTUAL
INSURANCE ASSOCIATION, (LUXEMBOURG); STANDARD STEAMSHIP
OWNERS' PROTECTION & INDEMNITY ASSOCIATION BERMUDA LTD;
TEEKAY SHIPPING CANADA LTD; AMERICAN RIVER TRANSPORTATION
CO; EXMAR LUX SA; TECTO LUXENBOURG SA

Defendants-Appellees;

---

**Appeal from the United States District Court**
**For the Eastern District of Louisiana**

---

-1-

Before SMITH, DENNIS, and PRADO, Circuit Judges.

DENNIS, Circuit Judge:

This case stems from an allision[1] between M/V DIANE OAK, a vessel now owned and operated by Teco Barge Line, Inc., and a wharf owned by Dow Chemical Company ("Dow"). The allision caused severe damage to the wharf. Consequently, M/V DIANE OAK[2] filed a petition for limitation of liability; Dow countered by filing a claim in the limitation proceeding seeking recovery of the damages sustained from the allision. Thereafter, M/V DIANE OAK brought suit *in rem* against three other vessels on the river that morning and *in personam* against related interests, alleging that those vessels had so embarrassed her navigation as to be contributory and proximate causes of the allision and thus deserving of some liability for the damages incurred by Dow.

After a bench trial solely on the question of liability, the district court found that the M/V DIANE OAK was solely at fault for the allision. M/V DIANE OAK timely appeals contending that the district court: (1) erroneously applied a presumption of fault against her; (2) erroneously relied on the "last clear chance" doctrine to excuse negligence on the part of the other

---

[1] "An allision is a collision between a moving vessel and a stationary object." THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW, § 14-2 (4th ed. 2004).

[2] For the sake of clarity, we, like the parties, generally refer to each of the vessels and their respective interests simply by referring to the vessel itself.

vessels; and (3) failed to properly apply controlling principles of proximate causation and comparative fault amongst all of the vessels.  Finding no reversible error, we affirm.

## I.  BACKGROUND

On the morning of March 5, 2001, four vessels traveling on the Mississippi River converged on 35 Mile Point.  Two of those vessels, the M/V DIANE OAK and the M/V GOTLAND SPIRIT were headed south, down the river.  The other two, the M/V GINNY STONE and the DONAU were headed north, up the river.  It is undisputed that all four vessels safely passed 35 Mile Point.  It is also undisputed that the M/V DIANE OAK allided with the Dow wharf two miles and nearly sixteen minutes downriver from 35 Mile Point.

In this case, the district court determined that as the lead southbound vessel, M/V DIANE OAK was the privileged vessel and thus had the right-of-way over each of the other three vessels.  Second, the court determined that with this privilege, the M/V DIANE OAK was under a concomitant obligation to give instructions to the other vessels as to the manner and place of meeting and passing. *See* Inland Navigation Rule 9(a)(ii), 33 U.S.C. § 2009(a) ("A power-driven vessel operating in narrow channels . . . and proceeding down-bound with a following current shall have the right-of-way over an up-bound vessel, *shall* propose the manner and place of proper passage, and *shall* initiate the maneuvering signals . . . as appropriate.") (emphasis added).  Citing M/V DIANE OAK's failure to

"adequately direct the traffic in this area that morning" and to "give adequate and timely instructions on the place and manner of passing," the district court identified M/V DIANE OAK's failure to adhere to her duties as the lead southbound vessel as "the primary problem" in this allision.

Specifically, the district court faulted M/V DIANE OAK for allowing M/V GOTLAND SPIRIT to overtake her so close to the Point with both vessels traveling at high speeds. According to the court, this created a situation where M/V GOTLAND SPIRIT became the privileged vessel and allowed M/V GOTLAND SPIRIT to keep M/V GINNY STONE on the Point (for a port to port passing, instead of the starboard passing M/V DIANE OAK arranged with M/V GINNY STONE), as well as allowing GOTLAND SPIRIT to direct traffic and permit DONAU to come up to the Point. Similarly, the court also faulted M/V DIANE OAK for miscalculating the speed and location of the various vessels, an error that caused all four vessels to come up on the Point around the same time and that, according to the district court, could have been avoided had M/V DIANE OAK held M/V GINNY STONE below the Point or communicated earlier with M/V DONAU and held her up below the Point.

The district court then turned its attention to the conduct of the other vessels, stating that their liability, if any, "boils down to two relatively simple factual issues to be resolved." The first being, "whether or not any neglect or fault that did occur on the part of the GINNY STONE and/or NOBRA 56 [M/V GOTLAND SPIRIT]

-4-

had anything to do with proximately causing the allision that later occurred." The district court answered this first question in the negative, and in so doing relied on the testimony of M/V DIANE OAK's pilot, Captain Couey, in which he admitted—after being impeached with his prior deposition testimony—that he had "all the chance in the world" to successfully navigate "35 Mile Point but for the actions of DONAU." Thus the district court held that:

> in all probability, regardless of what had gone on up until that the action of the DONAU coming upriver, the upriver tanker, [Captain Couey] would have safely navigated the Point despite the fact that the GINNY STONE was right on the Point and despite the fact that NOBRA 56 [M/V GOTLAND SPIRIT] had come downriver at what the DIANE OAK claims was too fast a speed and passed her too close to the Point. That passing had occurred and it's obvious to me that the DIANE OAK at that point had plenty of room to clear that Point.

In essence, then, the court found that even assuming *arguendo* that both M/V GOTLAND SPIRIT and M/V GINNY STONE were in some respects at fault, that fault would only be fault in the abstract to the extent it was neither a contributory nor proximate cause of the subsequent allision.

The second question for the district court was whether the northbound M/V DONAU embarrassed the navigation of M/V DIANE OAK, with its fault thereby being a contributory and proximate cause of the subsequent allision with Dow's wharf. In answering this question, the district court examined the evidence supporting Captain Couey's claim that, as he was trying to navigate around 35 Mile Point, the northbound M/V DONAU passing starboard to starboard

-5-

had initially moved to the west bank to allow her room to pass, but then for some unexplained reason suddenly veered back directly at the stern of DIANE OAK's tow.

The district court explicitly rejected Couey's testimony on this score:

> I just find not credible that testimony because it seems to me that, first of all, if the DONAU and the DIANE OAK had passed within 20 feet of each otherSSthat's almost "reach out and touch" distance between these two vesselsSSthen there would have been a lot of . . . excited utterances . . ., a lot of noise, a lot of racket, or screaming over those VHF radios. There would have been bells and whistles and emergency signals. You would have expected there would be something I didn't see and I didn't hear that makes me believe the passing was not nearly that close.

The court thus concluded, "So I think the preponderance of the credible evidence is that the passing, although perhaps closer than would be an ideal situation, was certainly not 20 feet and was probably more like somewhere between 125 and 150 feet away. . . .[and] the actions of the DONAU/NOBRA 97 did not embarrass the navigation of the DIANE OAK or her tow and was not a proximate cause of the subsequent allision." Having thus resolved the two factual disputes, the court concluded that "the sole fault in the allision was the negligence of the DIANE OAK." M/V DIANE OAK timely appeals.

## II. ANALYSIS

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are

reviewed *de novo*."[3] Furthermore, this court reviews a district court's findings of fact regarding the respective fault, if any, of each of the four vessels and whether they were contributory and proximate causes of the allision for clear error.[4]

The M/V DIANE OAK challenges both the district court's findings of fact and conclusions of law on appeal. Specifically, M/V DIANE OAK contends that the district court: (1) erroneously applied the *Oregon* presumption of fault against her; (2) erroneously relied on the "last clear chance" doctrine to excuse negligence on the part of the other vessels; and (3) failed to properly apply controlling principles of proximate causation and comparative fault. We address each contention in turn.

### A. *The Oregon*

M/V DIANE OAK's first contention on appeal is that the district court erroneously applied the presumption of fault announced in *The Oregon*, 158 U.S. 186 (1895), against her and thus in favor of the three other vessels.[5] Applying this presumption of

---

[3] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000).

[4] *See* FED. R. CIV. P. 52(a); *Avondale Indus. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 492 (5th Cir. 1994) ("In an admiralty action tried by a court without a jury, the factual findings of the District Court are binding unless clearly erroneous. Questions concerning the existence of negligence and causation are treated as factual issues subject to the clearly erroneous standard.").

[5] It is important to distinguish at the outset between the presumption of *fault* announced in *The Oregon* and the presumption of *causation* announced in *The Pennsylvania*; the latter case holding

fault was error, she contends, because the *Oregon* rule should apply only in favor of the damaged stationary object and therefore is inapposite given the facts at hand: where liability is uncontested as between the damaged stationary object and the alliding vessel and the only question (beyond the extent of damages sustained by the stationary object) is liability for the allision *as between the navigating vessels*.

We conclude, however, that we need not decide the applicability *vel non* of the *Oregon* rule in order to resolve this appeal. "Evidentiary presumptions . . . are designed to fill a factual vacuum. Once evidence is presented . . . presumptions become superfluous because the parties have introduced evidence to

---

that a vessel in violation of a statutory rule designed to prevent collisions bears the burden of showing "not merely that her fault might not have been one of the causes, or that is probably was not, but that it could not have been." *The Pennsylvania*, 86 U.S. 125 (1874). *Compare* SCHOENBAUM, ADMIRALTY & MARITIME LAW , § 14-3, at 104-05 (classifying the rule of *The Oregon* as a "presumption of fault" akin to the common law doctrine of *res ipsa loquitor* "primarily applicable in allision cases," which "creat[es] a rebuttable presumption of *negligence* on the part of a party who is in exclusive control of an instrumentality with regard to a mishap that ordinarily does not occur in the absence of negligence") (emphasis added), *with id.* at § 14-3, at 101 (classifying the rule of *The Pennsylvania* as not establishing a rule of fault but as being "limited to *causation*") (emphasis added), *and* DAVID W. ROBERTSON ET AL, ADMIRALTY & MARITIME LAW IN THE UNITED STATES 384 (2d ed. 2001) (describing the rule of *The Pennsylvania* as creating "a strong presumption that the statutory violation was a *cause in fact* of the accident," and distinguishing this rule from the common-law concept of negligence *per se* famously applied in *Martin v. Herzog*, 126 N.E. 814 (N.Y. 1920) (Cardozo, J.)).

dispel the mysteries that gave rise to the presumptions."[6]

In this case, the outcome-determinative questions in this allision case concern: (1) breach of the duty of care on the part of the four vessels, and (2) causation, with causation having sub-elements of: (a) cause in fact and (b) proximate or legal cause. And on all of these scores, the district court considered all of the evidence presented at trial and made specific findings. So even though the court may have framed its breach analysis through the lens of the *Oregon* rule, the court nevertheless made findings of duty, breach, and causation regarding M/V DIANE OAK and each of the other three vessels independent of that presumption that account for the result it reached. These findings, therefore, properly cabined the scope of the *Oregon* rule, which speaks explicitly only to a presumed breach on the part of the alliding vessel,[7] and is not a presumption regarding either the question of causation (either cause in fact or legal cause) or the percentages

---

[6] *See Rodi Yachts, Inc.*, 984 F.2d at 887; *see also* GRIFFIN, THE AMERICAN LAW OF COLLISION, § 25, at 43 ("Such 'presumptions' are, of course, not rules of law or even of evidence. They merely express inferences of fact, based on experience and probabilities, and their only effect is to put upon the vessel subject to the presumption the burden of going forward with evidence to show that, in the particular case, the inference is unwarranted."); *id.* ("The exact scope and operation of these *prima facie* presumptions are to cast upon the party against whom they operate, the duty of going forward in argument or evidence, on the particular point to which they relate.").

[7] *The Oregon*, 158 U.S. at 197-98.

of fault assigned parties adjudged negligent.[8]

Because the district court did not erroneously apply the *Oregon* presumption here, the only available basis for this appeal becomes the propriety of the district court's findings regarding the respective fault of each of the four vessels and whether any or all of that fault was a contributory and proximate cause of the allision.[9] Evaluating the propriety of the district court's findings requires this court to consider M/V DIANE OAK's second contention on appeal, *viz.*, that the district court's proximate cause analysis with regard to the M/V GOTLAND SPIRIT and the M/V GINNY STONE amounted to an application of the last clear chance doctrine.

**B. Last Clear Chance**

M/V DIANE OAK contends that the district court erroneously excused acknowledged negligent conduct on the part of each vessel "by essentially invoking, [the] discredited last clear chance doctrine," in finding that:

> [I]n all probability, regardless of what had gone on up until that the action of the DONAU coming upriver, the upriver tanker, [M/V DIANE OAK] would have safely navigated the Point despite the fact that the GINNY STONE was right on the Point and despite the fact that NOBRA 56 had come downriver at what the DIANE OAK claims was too fast a speed and passed her too close to the Point. That passing had occurred and it's obvious to me that the

---

8 *Id.; see also* SCHOENBAUM, ADMIRALTY & MARITIME LAW , § 14-3, at 104-05.

9 *See* FED. R. CIV. P. 52(a); *Avondale Indus.*, 15 F.3d at 492.

DIANE OAK at that point had plenty of room to clear that Point.

While we agree with the M/V DIANE OAK that the last clear chance doctrine is obsolete in light of admiralty's comparative fault regime, we do not share M/V DIANE OAK's view of the rationale employed by the district court in assessing liability for the damage to Dow's wharf.  Specifically, we do not read the record of the district court's reasoning as indicating that the district court found all of the vessels at fault in causing the accident or that the court excused certain fault on the part of M/V GOTLAND SPIRIT and M/V GINNY STONE because that fault was slight relative to the fault the court attributed to M/V DIANE OAK.  Instead, it appears clear to us that the district court found that any negligent conduct of these two vessels, assuming that either vessel was negligent, was not a proximate cause of the subsequent allision.  Thus the district court applied a valid rule of legal causation, not a rule of major or minor fault as the traditional (and now discredited) last clear chance cases did.[10]

---

[10] *See Crawford v. Indian Towing Co.*, 240 F.2d 308 (5th Cir. 1957) ("Where, as here, an act is negligent, but is not the proximate cause of the injury, it is merely a condition.  As such it is not the basis of liability."); *Am. River Trans. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998) ("To be sure, the presence of the barges in this case was a but-for cause of the allision . . . .  But in admiralty, the 'fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract.'") (quoting *Inter-Cities Navig. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979)); *see also In re Kinsman Transit Co.*, 338 F.2d 708 (1964) (2d Cir. 1965) (distinguishing two lines of cases where courts employed

In sum, we conclude that the district court's findings that neither the GOTLAND SPIRIT nor the GINNY STONE were at fault for the subsequent allision is not the product of an application of the discredited last clear chance doctrine. Rather, the district court's findings are the result of a valid proximate cause analysis. Whether the district court's proximate cause findings are clearly erroneous based on the evidence in the record, is a separate question. And, answering that question fortuitously implicates the M/V DIANE OAK's third and final contention on appeal.

## C. Proximate Cause

M/V DIANE OAK contends that the district court's finding that she was solely at fault for the allision is clearly erroneous. Intertwined with this contention is DIANE OAK's claim that the district court failed to consider the various violations of the Inland Rules committed by the other three vessels, and thus failed to apply the presumption of cause in fact announced in *The Pennsylvania*, 86 U.S. 125 (1873). After reviewing the record, we

---

the phrase "last clear chance" and finding that sometimes it was not "clear that the fault of the exonerated vessel was a 'cause' in the sense that the accident was within the risk that made her action negligent,"); Etta M. Davidson, *Last Clear Chance in Admiralty: A Divided Doctrine*, 66 TEX. L. REV. 133, 157 (1987) (noting that while the last clear chance doctrine has been used as an escape valve from the divided damages rule it has also historically "embodied a rule of legal causation: liability does not attach to a ship in an improper position when that position was not the legal cause of the collision.").

disagree.

In her brief, M/V DIANE OAK argues various violations of the Inland Rules committed by each of the other three vessels, and then charges error to the district court's failure to apply the *Pennsylvania* rule, by which a vessel in derogation of a statutory rule bears the burden of demonstrating that its fault could not have been the cause in fact of the casualty. "*The Pennsylvania* established a sometimes awesome rule of causation in maritime collision upon the showing of any statutory violation."[11] But "methods of rebutting the rule are not few or tightly circumscribed."[12] Indeed, this Circuit has long adhered to the view that:

> *The Pennsylvania* did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision, no matter how speculative, improbable, or remote.[13]

"As this Circuit's progeny of *The Pennsylvania* reveals, fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract."[14]

---

[11] *Bd. of Commr's of Port of New Orleans v. M/V FARMSUM*, 574 F.2d 289, 297 (5th Cir. 1978).

[12] *Id.*

[13] *Compania De Maderas De Caibarien v. The Queenston Heights*, 220 F.2d 120, 122-23 (5th Cir. 1955).

[14] *M/V Farmsum*, 574 F.2d at 297; *see also* G. GILMORE & C. BLACK, THE LAW OF ADMIRALTY, at 494 (2d ed. 1975).

Applying this precedent to this case, we conclude that the district court correctly recognized that fault in the abstract does not give rise to liability.[15]  Instead, the fault must be a contributory and proximate cause of the damages sustained.[16]  Consequently, the fulcrum upon which this last issue on appeal turns is whether the district court's findings resulting from its causation analysis were clearly erroneous.[17]

"A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed."[18]  Here, district court answered the question of whether any neglect or fault of the M/V GINNY STONE or M/V GOTLAND SPIRIT was a proximate cause of the allision with the Dow wharf in the negative.  In so doing, the district court relied on Captain Couey's own testimony

---

[15] Moreover, the presumption is ultimately irrelevant insofar as DIANE OAK herself violated various Inland Rules, most notably by her failure to direct the manner and means of passing pursuant to Rule 9 and 14(a), and thus the presumption would apply in both directions, essentially cancelling out any impact. *Cf. Rodi Yachts*, 984 F.2d at 887 ("The method of decision by presumptions could not work in this case, where each party is armed with a presumption . . . ."); *id.* (commenting that "[w]here presumptions clash, they disappear").

[16] *M/V FARMSUM*, 574 F.2d at 297.

[17] *See Avondale Indus.*, 15 F.3d at 492 ("In an admiralty action tried by a court without a jury, the factual findings of the District Court are binding unless clearly erroneous. Questions concerning the existence of negligence and causation are treated as factual issues subject to the clearly erroneous standard.").

[18] *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993).

that but for M/V DONAU's embarrassing the M/V DIANE OAK's navigation, he would have safely navigated 35 Mile Point. Furthermore, we observe that Captain Couey's accident report prepared immediately after the incident failed to mention the M/V GOTLAND SPIRIT or any southbound river traffic at all. Thus, based on the record, we are not convinced that the district court made a mistake when it concluded that the allison between the M/V DIANE OAK and the Dow wharf was not proximately caused by the actions of the M/V GINNY STONE and the M/V GOTLAND SPIRIT.

Similarly, based on the evidence in the record, we do not conclude the district court was mistaken when it concluded that the M/V DONAU's actions did not embarrass M/V DIANE OAK's navigation in order for those actions to be a proximate cause of the allision. This conclusion rested almost entirely on the district court's credibility determination on the specific issue of how close the ships were during their starboard to starboard passing. The district court explicitly found incredible Captain Couey's testimony that M/V DONAU veered at the M/V DIANE OAK's tow within as close as 20 feet; instead, the district court credited the testimony of the M/V DONAU's pilot and his shipmate, the gist of which was that the passing was not within 20 feet but instead closer to 150 feet. The district court also found Captain Couey's claim that the M/V DONAU embarrassed his navigation incredible because Captain Couey did not complain about that navigation, *i.e.*,

by sounding an alarm or otherwise expressing his displeasure, until after the allision.

Credibility determinations are the province of the trier of fact, which in this case is the district court.[19] Moreover, our review of that credibility determination and the concomitant proximate causation finding is for clear error, not just mere error.[20] Thus, even though a different fact finder may have reached a different conclusion regarding M/V DIANE OAK's claim that the M/V DONAU embarrassed her navigation, we can only reverse if we have a "definite and firm conviction that a mistake has been made."[21] In this case, we are neither firmly nor definitely convinced that a mistake has been made with respect to the district court's determination that the M/V DONAU did not proximately cause M/V DIANE OAK's allision with Dow's wharf. Accordingly, the district court's final judgment is **AFFIRMED.**

---

[19] *See Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 378 (5th Cir. 2000); *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1154 (5th Cir. 1990).

[20] *See, e.g.*, *Reich v. Lancaster*, 55 F.3d 1034, 1045 (5th Cir. 1995) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573-74, (1985)); *In re Placid Oil Co.*, 158 Bankr. 404, 412 (N.D. Tex. 1993) ("This court does not find facts. Neither is it free to view the evidence differently as a matter of choice."); *E.E.O.C. v. Clear Lake Dodge*, 25 F.3d 265, 270 (5th Cir. 1994) ("We are not permitted to re-weigh the evidence on appeal simply because we disagree with the choices made by the district court.").

[21] *Braus*, 995 F.2d at 80.