**Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion filed October 26, 2023.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00470-CV**

---

**BUGLE SHIPPING COMPANY LIMITED, AND NIKI SHIPPING COMPANY, S.A., Appellants**

**V.**

**DILSHAD MAKBUL SHEIKH, INDIVIDUALLY, AND AS NEXT FRIEND OF MAKBUL ABDUL RAJJAK SHEKH (DECEASED), Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 114337-CV**

## MEMORANDUM OPINION

In this interlocutory appeal from the denial of two special appearances, the only issue is whether the trial court has specific personal jurisdiction over two nonresident defendants. For the reasons explained below, we conclude that the trial court has specific personal jurisdiction over one of the nonresident defendants, but not both of them.

# BACKGROUND

This is a Jones Act case, and it involves a seaman who sustained fatal injuries in an alleged forklift accident. At the time of the accident, the seaman was working on a ship that had been docked here in Texas.

Dilshad Makbul Sheikh, the widow of the seaman, filed suit in Texas against multiple parties, including Bugle Shipping Company, an Isle of Man entity, and Niki Shipping Company, a Swiss entity. In her live pleading, Sheikh alleged that Bugle and Niki were subject to the trial court's jurisdiction because they "owned, operated, managed, owned *pro hac vice* and/or controlled" the ship.

Bugle filed a special appearance, admitting that it was the registered owner of the ship. However, Bugle argued that it was not subject to the trial court's specific personal jurisdiction because Bugle did not direct or control the ship's entry into Texas waters. According to Bugle, the ship entered Texas randomly and fortuitously while under the control of a third-party charterer.

In a separate special appearance, Niki argued that it was not subject to the trial court's specific personal jurisdiction because Niki has never owned, managed, operated, or controlled the ship. Niki asserted instead that it has merely provided corporate management services to Bugle.

Bugle and Niki also argued in their special appearances that they were not subject to the trial court's general personal jurisdiction. In a response, Sheikh acknowledged that general personal jurisdiction was not at issue, but she argued that the trial court could still exercise specific personal jurisdiction over Bugle and Niki. The trial court agreed with Sheikh and signed separate orders denying the special appearances from both Bugle and Niki.

This interlocutory appeal followed.

## ANALYSIS

Because there is no dispute that Bugle and Niki are nonresident defendants, the trial court could only assert personal jurisdiction over them if the Texas long-arm statute authorized the exercise of jurisdiction, and if such exercise was consistent with the federal and state constitutional guarantees of due process. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident when the nonresident "does business in this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042. The statute describes that phrase with three examples, but the examples are not exhaustive. *Id.* Instead, they are provided "in addition to other acts," and that broad language has been construed to mean that the statute will "reach as far as the federal constitutional requirements of due process will allow." *See Moki Mac*, 221 S.W.3d at 574–75. Consequently, in many cases, the analysis of whether a Texas court may assert personal jurisdiction over a nonresident collapses into the single inquiry of whether the exercise of jurisdiction comports with the limitations of federal due process. *Id.* at 575.

The exercise of personal jurisdiction is consistent with federal due process when the nonresident has established "minimum contacts" with the forum state, and when the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* Minimum contacts are established when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.*

The extent of the nonresident's contacts can give rise to two types of personal jurisdiction. *Id*. The first type is general jurisdiction, which depends on the nonresident having made continuous and systematic contacts with this state. *Id.* In such cases, jurisdiction is established regardless of whether the defendant's alleged

3

liability arises from those contacts. *Id.* The second type is specific jurisdiction, which is established when the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Id.* at 575–76. This case involves a question of specific jurisdiction only.

In a challenge to either type of personal jurisdiction, the plaintiff and the nonresident defendant bear shifting burdens of proof. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff has the initial burden of pleading sufficient allegations to bring the defendant within the reach of the Texas long-arm statute. *Id.* If the plaintiff satisfies that burden, then the burden shifts to the defendant to negate every basis for jurisdiction alleged. *Id.* The defendant can satisfy that burden on a factual basis by presenting evidence that the defendant has had no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* at 658–59. Alternatively, the defendant can show that even if the plaintiff's allegations are true, they are still legally insufficient to support the exercise of either general or specific jurisdiction. *Id.* at 659.

Whether the parties have met these respective burdens is a question of law that we review de novo. *See Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

## I.    Sheikh's Initial Burden

Sheikh alleged that Bugle and Niki were liable for damages arising out of her husband's death because her husband died on a "commercial vessel" in Texas that Bugle and Niki "owned, operated, managed, owned *pro hac vice* and/or controlled." These allegations were sufficient to satisfy Sheikh's initial burden of showing that Bugle and Niki were "do[ing] business in this state," and that the trial court could exercise personal jurisdiction over them pursuant to the Texas long-arm statute. *See Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no

4

pet.) (stating that the plaintiff's minimal pleading burden is satisfied by an allegation that the nonresident defendants are doing business in Texas).

The burden accordingly shifted to Bugle and Niki to negate this basis for jurisdiction.

## II.     Bugle's Special Appearance

Bugle focused its special appearance largely on the issue of purposeful availment, which is necessary for a trial court to exercise personal jurisdiction over a nonresident defendant. *See Moki Mac*, 221 S.W.3d at 575.

There are three rules in a purposeful-availment inquiry. *Id.* First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* And third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.*

With these rules in mind, Bugle asserted that it did not purposefully direct its ship to Texas, nor did it control any of the ship's activities in Texas. Even though Bugle acknowledged that it was the registered owner of the ship, Bugle asserted that, at the time of the accident, the ship had been under the direction and control of a third party, which had been operating under the terms of a charter.

A charter is an arrangement in which one person or entity (the "charterer") has the right to use the vessel of another (the "owner"). *See Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993). And in the field of maritime law, there are essentially two types of charters: a time charter (also known as a voyage charter), and a bareboat charter (also known as a demise charter). *Id.*

With a time charter, the owner retains possession and control of the vessel. *Id.* at 81. The owner also provides whatever crew is needed and is responsible for

5

normal operating expenses. *Id.* The charterer's use of the vessel is generally limited to a defined period of time (or when the charter is characterized as a voyage charter, between two or more defined points). *Id.*

With a bareboat charter, the owner relinquishes possession and control of the vessel without crew, provisions, fuel, or supplies—hence, a "bare" boat. *Id.* The charterer must cover all essential operating expenses, and has liability for any casualties resulting from such operation. *Id.*

Bugle asserted that the ship in this case had been operating under the terms of a bareboat charter. But Bugle did not attach a copy of the alleged bareboat charter to its special appearance. Instead, Bugle offered the affidavit testimony of its director, who made the following select statements:

12. Bugle has not solicited or done any acts constituting business in the State of Texas.

22. Bugle did not have control over where the [ship] would go, what it would carry, or for whom it would work.

28. At the time of the alleged incident at issue in this suit, the [ship] was bareboat chartered by Bugle to MSC Mediterranean Shipping Company S.A., a Swiss company.

30. At the time of the alleged incident at issue, the [ship] was under the control and direction of the vessel's bareboat charterer, MSC Mediterranean Shipping Company S.A.

32. Bugle has never purposely directed the [ship] to Texas.

34. To the extent that the [ship] has called at Texas ports, any and all such calls were made under the commercial direction and control of the vessel's bareboat charterer . . . .

Based on this evidence, Bugle argued that it did not purposefully avail itself of the privilege of conducting activities in Texas. Bugle argued instead that its contacts with Texas were random and fortuitous, because the affidavit testimony

6

established that its ship was brought here at the unilateral direction of the charterer, rather than at Bugle's own direction.

Bugle repeats these arguments in its brief on appeal, and Sheikh responds that Bugle's affidavit testimony cannot be considered because it is conclusory. We agree with Sheikh.

A conclusory statement asserts a legal or factual conclusion with no basis or explanation. *See Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Such statements are substantively defective and amount to no evidence. *See Hoagland v. Butcher*, 396 S.W.3d 182, 193 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Here, the affidavit testimony that "Bugle has not solicited or done any acts constituting business in the State of Texas" and that "Bugle has never purposely directed the [ship] to Texas" are unsupported legal conclusions. *Cf. Ennis v. Loiseau*, 164 S.W.3d 698, 703 (Tex. App.—Austin 2005, no pet.) (affidavit testimony was conclusory where affiant asserted "I do not have any substantial connection with Texas arising from any of my actions or conduct purposefully directed toward Texas").

When paraphrased, the remaining statements in the affidavit assert that Bugle had no control over the ship because it was bareboat chartered. But the existence of a bareboat charter is a mixed question of law and fact. *See Torch, Inc. v. Alesich*, 148 F.3d 424, 426 (5th Cir. 1998) ("Determining whether a bareboat charter exists is a mixed question of law and fact and is subject to broad appellate review."). And without a copy of the alleged bareboat charter, Bugle's naked assertion that it relinquished control of the ship under the charter is conclusory. *Cf. Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (affiant's unsupported assertion that an agreement had been modified was conclusory without a copy of the modification);

*Kolius v. Center Point Energy Houston Elec. LLC*, 422 S.W.3d 861, 866 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (affiant's unsupported assertion that a utility was supervising a third party was conclusory without any contracts or documents relating to the alleged supervision).

Bugle nonetheless contends that it is not amenable to jurisdiction in Texas, citing *American Home Assurance Co. v. M/V One Helsinki*, 546 F. Supp. 3d 90 (D. Mass. 2021). In that case, the district court concluded that the owner of a ship had not purposefully availed itself of the benefits of the forum state because the owner had entered into a bareboat charter and had relinquished all control over the ship's destinations. *Id.* at 96. Bugle believes that the same reasoning should apply here, based on the alleged existence of a bareboat charter, but that case is distinguishable because the terms of the bareboat charter appeared in the record, unlike here. *Id.* (addressing how the charter had been designated in the record).

Bugle also cites to *Porina v. Marward Shipping Co.*, 521 F.3d 122 (2nd Cir. 2008) as authority that the unilateral activities of third-party charterers cannot be imputed to a ship's owner. But again, the court in that case was able to review the terms of the charter, unlike here. *Id.* at 128 (noting that the charterers "were free under the charters to take the ship to any safe port in the world").

Because the key portions of Bugle's affidavit testimony are conclusory—and therefore, not evidence—we conclude that Bugle failed to negate Sheikh's jurisdictional allegations. Furthermore, we need not consider whether the trial court's exercise of jurisdiction would comport with traditional notions of fair play and substantial justice because Bugle did not present any arguments in its brief concerning that issue. *See* Tex. R. App. P. 38.1(i).

In sum, we conclude that the trial court correctly denied Bugle's special appearance.

## III. Niki's Special Appearance

Like Bugle, Niki also focused its special appearance on the issue of purposeful availment, but unlike Bugle, Niki's arguments did not depend on the existence of a bareboat charter.

Niki supported its special appearance with an affidavit from its CEO, who testified in part as follows:

> 22. Niki has never held an ownership interest in the [ship]. Niki has merely provided corporate management services to the owner of the [ship], Bugle Shipping Company Limited.
>
> 23. At all times relevant to this lawsuit, Niki was not the ship manager of the [ship]. Niki had no control over where the [ship] traveled.

This affidavit testimony fully negates Sheikh's jurisdictional allegation that Niki "owned, operated, managed, owned *pro hac vice* and/or controlled" the ship.

Sheikh suggests that this affidavit testimony depends on the terms of a bareboat charter, which was omitted from Niki's special appearance, just like with Bugle. And in the absence of the bareboat charter, Sheikh argues that the affidavit testimony is conclusory. We disagree. Unlike Bugle, Niki disclaimed an ownership interest in the ship. And due to that lack of ownership interest, Niki never claimed to have entered into a bareboat charter with another party.

To be sure, there was additional affidavit testimony from Niki's CEO that a bareboat charter existed between Bugle and a third party, but even if that testimony is excluded from consideration, the other statements recited above were sufficient to establish that Niki lacks minimum contacts with Texas.

Sheikh did not produce any controverting evidence in response to Niki's special appearance. In the absence of such evidence, we conclude that the trial court

9

erred by denying Niki's special appearance. *Cf. Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990) (holding that the manager of a ship was not subject to a trial court's jurisdiction where the manager produced uncontroverted evidence that it did not control the destination of the ship).

## CONCLUSION

The order denying Bugle's special appearance is affirmed, whereas the order denying Niki's special appearance is reversed, and judgment is rendered dismissing Sheikh's allegations against Niki for want of personal jurisdiction.


/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.